1  Danielle Hultenius Moore (SBN 232480)
       E-Mail:  dmoore@fisherphillips.com
2  Miranda R. Watkins (SBN 279708)
       E-Mail:  mwatkins@fisherphillips.com
3  **FISHER & PHILLIPS LLP**
   4747 Executive Drive, Suite 1000
4  San Diego, California  92121
   Telephone:  (858)597-9600
5  Facsimile:  (858)597-9601

6  Attorneys for Defendant,
   Union Pacific Railroad Company

7

8              **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  THOMAS DUNGER, | Case No:  2:18-cv-06374-PA(SSx) |
| 11              Plaintiff, | *[Los Angeles Superior Court Case No. BC73484 before the Honorable Monica Bachner]* |
| 12          v. | |
| 13  UNION PACIFIC RAILROAD COMPANY, and DOES 1 through 20, inclusive, | **DECLARATION OF DANIEL GLENN IN SUPPORT OF DEFENDANT UNION PACIFIC RAILROAD COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| 14 | |
| 15          Defendants. | |
| 16 | |
| 17 | Date:    June 3, 2019 |
| 18 | Time:    1:30 p.m.<br>Ctrm:    9A |
| 19 | State Complaint Filed:  April 23, 2018<br>Trial: July 9, 2019 |

20      I, Daniel Glenn, hereby declare and state as follows:

21      1.    I am an individual in the above-entitled action.    I make this

22  Declaration in support of Defendant Union Pacific Railroad Company's ("UP")

23  Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment.

24  I have personal knowledge of the facts set forth herein, and if called upon to testify

25  thereto, I could and would competently do so under oath.

26      2.    I am the Manager of Shop Operations ("MSO") for UP at

27  Bloomington, California.  I have responsibilities at three UP locations - Commerce,

28  California; Bloomington, California; and Carson, California.  I have worked as the

1  Manager of Shop Operations for about 11 years, but I have worked for UP for about
2  24 years. I am the only MSO for UP's Mechanical Department in Los Angeles.

3      3.      As an MSO, I indirectly supervise approximately 550 agreement
4  (meaning union) employees. My job duties consist of, among other things,
5  handling all administration items regarding UP's Mechanical Department
6  employees and operations at Commerce, California; Bloomington, California; and
7  Carson, California. My administration duties include contract services, handling
8  environmental issues, and handling employee discipline and training. As part of
9  my employee discipline duties, I am often called to testify at internal UP
10  investigation hearings concerning employee discipline, as well as hearings
11  concerning attendance issues or workplace violence.

12     4.      During my employment, I indirectly supervised Plaintiff. Due to that,
13  and my role, I knew Plaintiff had attendance and disciplinary issues during his
14  employment with UP. Around December 2015, I learned that Plaintiff was having
15  attendance issues and had attendance issues in the past. In September 2015, UP
16  began utilizing a new system to track attendance ("attendance system"). This
17  system is set up with predefined parameters set up to trigger an attendance alert
18  after an employee has missed a certain number of days. I am not aware of what
19  predefined parameters UP initially set up regarding what number of missed days
20  would trigger an attendance alert. Once I receive an attendance alert about a UP
21  employee, I write a letter regarding their attendance issues.

22     5.      Around December 17, 2015, Plaintiff was having attendance issues.
23  As a result, I prepared and sent an Attendance Alert Notice to Plaintiff on or around
24  December 17, 2015, concerning his attendance issues and asking him to address
25  that issue with his local manager. A true and correct copy of my December 17,
26  2015, Attendance Alert Notice to Plaintiff is attached hereto as **Exhibit A**.

27     6.      Typically, I am made aware of any investigation hearings for
28  employees in any of the three California locations I am involved with. At that

1  point, I typically prepare paperwork for the hearing, send out notices to witnesses,
2  arrange for a Hearing Officer, and arrange for a court reporter to be present.

3      7.     UP's Mechanical Department has only a few employees qualified as
4  a Hearing Officer for dismissal hearings like Plaintiff's. UP likes to try to assign a
5  Hearing Officer that works in the same department as the employee being
6  investigated. Andreas Mader was one of the UP employees qualified as a Hearing
7  Officer for dismissal hearings like Plaintiff's. To qualify as a Hearing Officer, UP
8  requires attendance and completion of a multi-day course taught by UP Labor
9  Relations. I know this because I am also qualified as a Hearing Officer and
10 attended that course.

11     8.     Around November 2017, UP's Mechanical Department wanted
12 Mr. Mader to handle all dismissal hearings, if possible. It was also my
13 understanding that Plaintiff's Union had time limits set in their Collective
14 Bargaining Agreement ("CBA") regarding investigating employees. As such,
15 Mr. Dunger's hearing was scheduled for November 17, 2017. Based on the need
16 for a qualified Hearing Officer, availability, and UP's Mechanical Department's
17 desire to have Mr. Mader oversee dismissal hearings, I contacted Mr. Mader, and
18 arranged to have him serve as Plaintiff's Hearing Officer. At that time, Mr. Mader
19 was working out of UP's Omaha, Nebraska headquarters.

20     9.     Brad Steffel notified me that Plaintiff was going to be charged for
21 dishonestly misusing FMLA leave, which meant this issue would go to a hearing.
22 Mr. Steffel was set to be on vacation the week that Plaintiff's hearing was
23 scheduled for, so I agreed to appear and present evidence instead.

24     10.    In preparation for Plaintiff's November 17, 2017, hearing, I gathered
25 relevant documents from UP's APDS system (a system that stores employee files
26 digitally). I specifically gathered the following documents:

27     (a)    A November 9, 2017, letter from Brad Steffel to Thomas
28 Dunger with the subject line "Notice of Investigation" indicating it was delivered

1  to John Lemus with tracking and delivery confirmation which was attached to
2  Mr. Dunger's hearing transcript as Exhibits 1, 2.1, 2.2, and 2.3.  A true and correct
3  copy of that letter is attached hereto as **Exhibit B**.

4          (b)    A November 10, 2017, letter from Brad Steffel to Thomas
5  Dunger with the subject line "Notice of Investigation" which was attached to
6  Mr. Dunger's hearing transcript as Exhibit 3.  A true and correct copy of that letter
7  is attached hereto as **Exhibit C**.

8          (c)    UP's General Code of Operating Rules, Rule 1.6, dated April 7,
9  2010, and Appendix C: Glossary defining "dishonest" which was attached to
10  Mr. Dunger's hearing transcript as Exhibits 4.1 and 4.2.  A true and correct copy
11  of Rule 1.6 and Appendix C is attached hereto as **Exhibit D**.

12          (d)    UP's Family & Medical Leave Policy ("FMLA policy")
13  indicating it was revised August 5, 2015, which was attached to Mr. Dunger's
14  hearing transcript as Exhibit 5.1.  A true and correct copy of UP's FMLA policy is
15  attached hereto as **Exhibit E**.

16          (e)    UP's Use Family Medical Leave Appropriately policy ("leave
17  abuse policy") which was attached to Mr. Dunger's hearing transcript as Exhibit 6.
18  A true and correct copy of UP's leave abuse policy is attached hereto as **Exhibit F**.

19          (f)    UP's Ethics Bulletin:  Use Family Medical Leave appropriately
20  ("Ethics Bulletin") posting dated April 21, 2017, which was attached to
21  Mr. Dunger's hearing transcript as Exhibit 7.  A true and correct copy of UP's
22  Ethic's Bulletin is attached hereto as **Exhibit G**.

23          (g)    A October 6, 2017, letter from UP's Health and Medical
24  Services Department to Mr. Dunger regarding his leave which was attached to
25  Mr. Dunger's hearing transcript as Exhibit 8.1.  A true and correct copy of that
26  letter is attached hereto as **Exhibit H**.

27  / / /
28  / / /

(h)     Two screenshots from UP's online human resources system showing Mr. Dunger's employee ID number as 0044911 and showing that his intermittent leave was approved as of October 5, 2017, through October 5, 2018, which was attached to Mr. Dunger's hearing transcript as Exhibits 9 and 10.  A true and correct copy of those screenshots are attached hereto as **Exhibit I**.

(i)     Mr. Dunger's EDCS calendar for October 2017 showing days he used FMLA leave which was attached to Mr. Dunger's hearing transcript as Exhibit 11.  A true and correct copy of that EDCS calendar is attached hereto as **Exhibit J**.

(j)     A report indicating vacation days that were available to Mechanical employees in 2017 which was attached to Mr. Dunger's hearing transcript as Exhibit 12.  A true and correct copy of that report is attached hereto as **Exhibit K**.

(k)     A call log indicating days in which Mr. Dunger called UP's Layoff Line to request FMLA and/or paid vacation days in 2017 which was attached to Mr. Dunger's hearing transcript as Exhibit 13.  A true and correct copy of that call log is attached hereto as **Exhibit L**.

(l)     An FMLA Absence Detail report indicating days in which Mr. Dunger requested and/or used leaves from 2014 through 2017 that was attached to Mr. Dunger's hearing transcript as Exhibit 14.1.  A true and correct copy of that report is attached hereto as **Exhibit M**.

(m)     A video that Brad Steffel told me he had on his phone of Victor Prado playing a video on his phone depicting Plaintiff and others on a fishing boat. I retrieved the video from Mr. Steffel and saved it to a flash drive, which I presented at Mr. Dunger's hearing.   The flash drive was attached as Exhibit 15 to Mr. Dunger's hearing transcript.  A true and correct copy of that video is attached hereto as **Exhibit N**.

/ / /

DEC OF GLENN IN SUPPORT OF DEF'S MTN FOR SUMMARY JUDGMENT
FPDOCS 35182420.1

     (n)  An Employee Information sheet indicating Mr. Dunger's employee information which was attached to Mr. Dunger's hearing transcript as Exhibit 16.1. A true and correct copy of that sheet is attached hereto as **Exhibit O**.

     (o)  An Employee Information sheet indicating Jassier Vargas' employee information which was attached to Mr. Dunger's hearing transcript as Exhibit 16.2. A true and correct copy of that sheet is attached hereto as **Exhibit P**.

     (p)  An Employee Information sheet indicating Harrison Scharf's employee information which was attached to Mr. Dunger's hearing transcript as Exhibit 16.3. A true and correct copy of that sheet is attached hereto as **Exhibit Q**.

     (q)  An Employee Information sheet indicating John Lemus' employee information which was attached to Mr. Dunger's hearing transcript as Exhibit 16.4. A true and correct copy of that sheet is attached hereto as **Exhibit R**.

     (r)  A Work or School Excuse dated October 19, 2017, signed by Scott Lizotte requesting that Mr. Dunger be excused from work which was attached to Mr. Dunger's hearing transcript as Exhibit 17. A true and correct copy of that doctor's note is attached hereto as **Exhibit S**.

  11. On or about November 17, 2017, I appeared on behalf of UP at Plaintiff's hearing. I presented those documents which I had gathered from UP's APDS system, and, to my knowledge, they were attached to the transcript of Plaintiff's hearing as exhibits.

  12. I testified during the November 17, 2017, hearing and identified Plaintiff in a Facebook video that was presented as evidence at the hearing taken and given to me by Brad Steffel. The video depicted Plaintiff, and others on a fishing trip. I was able to identify Plaintiff in the video, as well as identify his voice in the video, because I had worked with him off and on throughout my time as Manager of Shop Operations. Because I worked with Plaintiff, I knew what he looked like and what his voice sounded like. I knew UP granted Plaintiff FMLA leave for himself, but I was not aware of his medical condition.

1       I declare under penalty of perjury, under the laws of the United States of

2  America, that the foregoing is true and correct.

3       Executed this __5__ day of April, 2019, at _Bloomington CA_.

4

5                              Daniel Glenn

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Cover Page – Exhibit A

Daniel Glenn
Manager Loco Ops
Mechanical Department

## UNION PACIFIC RAILROAD COMPANY



2000 S. Sycamore Ave
Bloomington, CA 92316

Cert Mail 7015 0640 0005 8960 1349

12-17-15

Thomas Dunger
P.O. Box 129
Crestline, CA 92325

Employee Id: 0444911
Craft: IAM

Subject: ATTENDANCE ALERT AND ADVISORY

Dear Mr. Dunger:

A recent review of your work history indicates your attendance is not satisfactory under the **UPRR Operating, Supply and Executive Departments Attendance Policy** (hereinafter "Policy"). A copy of the Policy is attached for your review. I've also enclosed a copy of your recent work history.

As a professional, you are expected to protect your job assignment on a full-time basis. Full-time is defined in the Policy as being available to work your assignment, whenever you are scheduled to work. Any unanticipated absences from work, particularly a refused call, no show, tardiness, or leaving prior to end of shift can negatively impact train service, commitments to our shippers and your co-workers ability to plan on and off duty activities. In addition, conditional FMLA layoffs taken pending the approval of the certification required under the Family Medical Leave Act can revert to unexcused absences and are taken into account for purposes of managing attendance.

You are required to contact your local manager to review your attendance record and any documentation you have that may explain your absences from work and your action plan for improving your attendance. Please contact your local manager, within the next 5 days, to schedule an appointment for this conference or review. You may also contact Manager of Operations,  Daniel Glenn, at 909-685-2721 to schedule an appointment for an attendance conference or review.

Personal circumstances may entitle you to authorized leave or may explain certain attendance issues. Therefore, I have listed below several Union Pacific resources you can contact for guidance or assistance.

| Resource | Contact | Phone |
|---|---|---|
| Employee Assistance Program | Help Line | 1-800-779-1212 |
| Operation Red Block | Help Line | 1-866-311-7255 |
| Drug and Alcohol Info Line | Help Line | 1-800-840-3784 |
| Peer Support | Help Line | 1-800-877-5707 |
| Health & Wellness Services/OHN | http://home.www.uprr.com/emp/ec/health/nurse_contacts.shtml | |
| Family Medical Leave | Help Line | 1-877-275-8747, Option 4 |
| Alertness Management/OHN | http://home.www.uprr.com/emp/ec/health/nurse_contacts.shtml | |

Union Pacific is counting on you to improve your attendance and appropriately address any circumstances that may necessitate your absence from work so no disciplinary action is necessary.

Respectfully,

Daniel K. Glenn
Manager Locomotive Operations

cc. Juan Estrada
ATTACHMENTS:  Attendance Policy / DSS  Work History

UP_Dunger_000021

**Exhibit A-8**

# Attendance Conference

12/17/2015

Thomas Dunger
Employee ID: 0444911

This is to confirm our conference took place on ___12/17/15___ (date) at ___Commerce, CA___ (location).

Job Title:
    Precision Mach Oper

Description of Conference Event:
    You allegedly failed to protect your employment on a full time basis through frequent or pattern layoffs and/or failure to report for service between 09/15/2015 and 12/16/2015

Agreement Professional's Signature: _____ Date: __12-17-15__

Manager's Signature: _____ Date: __12/17/15__

Employee comments:
    _majority court dates._

Manager comments:
(Please note if Union Rep was present.)
    _Present · John Lomas_

UP_Dunger_000020

**Exhibit A-9**

# Cover Page – Exhibit B



11/09/2017

Thomas Dunger
Employee ID: 0444911
P.O. Box 129
Crestline, CA 92325

Subject: NOTICE OF INVESTIGATION

Dear Thomas Dunger:

Please report to Commerce Diesel Facility, 4341 E Washington Blvd Commerce, CA at 08:00 hours on 11/17/2017 for the hearing to develop the facts and determine your responsibility, if any, in connection with the below charge.

> On 10/21/2017, at the location of Commerce Diesel Facility, at approximately 20:38 hours, while employed as a Machinist, you allegedly used FMLA-Vacation in a manner that was not consistent with the serious medical condition for which you received an FMLA entitlement from UPRR Health Services. You were allegedly dishonest when you requested FMLA Vacation time for 10/20/2017 and / or 10/21/2017. This is a possible violation of the following rule(s) and/or policy:
>     1.6: Conduct - Dishonest

Under the MAPS Policy, this violation is a Dismissal event. Based upon your current status, if you are found to be in violation of this alleged charge, Dismissal may result.

The investigation will be conducted in accordance with applicable provisions of the collective bargaining agreement between the Company and the organization representing your craft or class. You are entitled to representation and to present witnesses at your own expense in accordance with the agreement. Any request for postponement must be submitted in writing, including reason therefore. A copy of your written request for postponement must be given to me. I can be reached at phone number 323-475-3831.

The Rail Safety Improvement Act requires employees obtain their mandatory rest before attending a hearing. If you work an Hours of Service (HOS) covered position and you have not obtained the mandatory rest prior to commencement of the hearing, you cannot, consistent with the requirements of the RSIA, be allowed to attend or participate in the hearing and will be considered as having elected not to attend the hearing.

Respectfully,

Brad Steffel
Sr Mgr Sys Loco Facil

cc: Derrick D Battle, derrick.battle@districtlodge19.com - E-Mail
Juan N Estrada, jnesfrad@up.com - E-Mail

DELIVERED TO MACHINIST UNION REP JOHN LEMUS
ON 11/09/2017 @ 11:30 PM PT.

**Exhibit B-10**

UP_Dunger_000440

USPS.com® - USPS Tracking® Results



Page 1 of 4

# USPS Tracking®

FAQs > (http://faq.usps.com/?articleId=220900)

Track Another Package +

**Tracking Number:** 70160340000072982186

Remove ✕

Your item was delivered at 2:28 pm on November 13, 2017 in CRESTLINE, CA 92325.

## ☑ Delivered

November 13, 2017 at 2:28 pm
DELIVERED
CRESTLINE, CA 92325

Get Updates ∨

---

Text & Email Updates                                               ∨

---

Tracking History                                                   ∧

November 13, 2017, 2:28 pm
Delivered
CRESTLINE, CA 92325
Your item was delivered at 2:28 pm on November 13, 2017 in CRESTLINE, CA 92325.

November 13, 2017, 11:31 am
Available for Pickup
CRESTLINE, CA 92325

UP_Dunger_000441
11/17/2017

**Exhibit B-11**



**November 13, 2017, 11:29 am**
Arrived at Unit
CRESTLINE, CA 92325

**November 13, 2017, 9:12 am**
In Transit to Destination
On its way to CRESTLINE, CA 92325

**November 12, 2017, 10:12 pm**
Departed USPS Regional Facility
SAN BERNARDINO CA DISTRIBUTION CENTER

**November 12, 2017, 9:23 am**
In Transit to Destination
On its way to CRESTLINE, CA 92325

**November 11, 2017, 11:58 am**
Arrived at USPS Regional Facility
SAN BERNARDINO CA DISTRIBUTION CENTER

**November 11, 2017, 9:07 am**
In Transit to Destination
On its way to CRESTLINE, CA 92325

**November 10, 2017, 7:07 pm**
Arrived at USPS Regional Facility
SANTA ANA CA DISTRIBUTION CENTER

**Product Information**                                                                        ⌃

Postal Product:                                    Features:
                                                   Certified Mail™

Exhibit B-12





UP_Dunger_000443

**Exhibit B-13**

# Cover Page – Exhibit C

 **BUILDING AMERICA®**



11/10/2017

Thomas Dunger
Employee ID: 0444911
P.O. Box 129
Crestline, CA 92325

Subject: NOTICE OF INVESTIGATION

Dear Thomas Dunger:

Please report to Commerce Diesel Facility, 4341 E Washington Blvd Commerce, CA at 08:00 hours on 11/17/2017 for the hearing to develop the facts and determine your responsibility, if any, in connection with the below charge.

On 10/21/2017, at the location of Commerce Diesel Facility, at approximately 20:38 hours, while employed as a Machinist, you allegedly used FMLA-Vacation in a manner that was not consistent with the serious medical condition for which you received an FMLA entitlement from UPRR Health Services. You were allegedly dishonest when you requested FMLA Vacation time for 10/20/2017 and / or 10/21/2017. This is a possible violation of the following rule(s) and/or policy:
        1.6: Conduct - Dishonest

Under the MAPS Policy, this violation is a Dismissal event. Based upon your current status, if you are found to be in violation of this alleged charge, Dismissal may result.

The investigation will be conducted in accordance with applicable provisions of the collective bargaining agreement between the Company and the organization representing your craft or class. You are entitled to representation and to present witnesses at your own expense in accordance with the agreement. Any request for postponement must be submitted in writing, including reason therefore. A copy of your written request for postponement must be given to me. I can be reached at phone number 323-475-3631.

The Rail Safety Improvement Act requires employees obtain their mandatory rest before attending a hearing. If you work an Hours of Service (HOS) covered position and you have not obtained the mandatory rest prior to commencement of the hearing, you cannot, consistent with the requirements of the RSIA, be allowed to attend or participate in the hearing and will be considered as having elected not to attend the hearing.

Respectfully,

Brad Steffel
Sr Mgr Sys Loco Facil

cc: Derrick D Battle, derrick.battle@districtlodge19.com - E-Mail
Juan N Estrada, jnestrad@up.com - E-Mail

# Cover Page – Exhibit D



**Current User:** omnp293
**Logout**

---

⊖ **Rule Details**

**UPRR - General Code of Operating Rules**

**1.6:Conduct**

Employees must not be:

1. ~~Careless of the safety of themselves or others~~
2. ~~Negligent~~
3. ~~Insubordinate~~
4. Dishonest
5. ~~Immoral~~
6. ~~Quarrelsome~~
   or
7. ~~Discourteous~~

Any act of hostility, misconduct, or willful disregard or negligence affecting the interest of the company or its employees is cause for dismissal and must be reported. Indifference to duty or to the performance of duty will not be tolerated.

**Rule Updated Date**

April 7, 2010

| Rule Link |

http://home.www.uprr.com/ert/secure/jas/viewBook/view/rule/

---

**Exhibit D-15**



# APPENDIX C: GLOSSARY

**TRIGGERING EVENT:** Any rule or policy violation resulting in dismissal or remedial training under the MAPS progression. Employees who violate Rule 1.5, Drugs and Alcohol, in conjunction with a triggering event violation will not be eligible for a one time return to service opportunity through EAP and will be terminated from service.

**The following definitions, while not all inclusive or absolute, are intended to guide the determination of whether various acts by employees meet necessary criteria to be considered a violation of applicable Dismissal Rules:**

**ALTERCATION:** When an employee's actions cause or result in a quarrel characterized by physical activity such as pushing, shoving or fighting.

**CARELESS OF SAFETY:** When an employee's actions or failure to take action demonstrate an inability or an unwillingness to comply with safety rules as evidenced by repeated safety rules infractions. When an employee commits a specific rule(s) infraction that demonstrates a willful, flagrant, or reckless disregard for the safety of themselves, other employees, or the public.

**DISHONEST:** When an employee's actions or statements constitute lying, cheating, theft or deception.

**FELONY CONVICTION:** The conduct of an employee leading to the conviction of a felony in state or federal court is prohibited. Guilty pleas, diversion programs, deferred decisions or adjudication, and other alternative sentencing or adjudication procedures, regardless of local nomenclature, are considered convictions under this policy.

**FRAUD:** When an employee's actions or statements are intentional misrepresentations of fact for the purpose of deceiving others so as to secure unfair or unlawful gain.

**IMMORAL:** When an employee's actions are contrary to commonly accepted moral principles.

**INSUBORDINATION:** When an employee's actions or statements indicate a refusal (as opposed to a failure for cause) to carry out the instructions of a supervisor which are work, safety or policy related and which conform to accepted Company and industry practice, or when an employee demonstrates gross disrespect towards a supervisor. **NOTE:** Any failure to comply with Union Pacific's Drug and Alcohol Policy will be considered insubordination.

**NEGLIGENT:** An employee demonstrates negligence when his or her actions or failure to take action causes, or contributes to, the harm or risk of harm to the employee, other employees, the general public or company property.

**QUARRELSOME:** When an employee's continued behavior is inclined or disposed toward an angry verbal confrontation with others in the workplace.

**THEFT:** When an employee's action is intended to and/or results in the taking and/or removing of property or other items of value from the Company, its customers, or other employees without proper authority.

UP_Dunger_000446

# Cover Page – Exhibit E

 BUILDING AMERICA®



# Family & Medical Leave Policy, including Active Duty Family Military Leave & Military Caregiver Leave, for Employees Subject to Collective Bargaining Agreements

(Revised August 5, 2015)

## Purpose

This policy outlines conditions and procedures under which eligible employees may take limited periods of time off without pay for certain qualifying medical, family-related, and family-military related reasons. This policy is intended to cover eligibility for unpaid leave, including unpaid leave authorized in the Family and Medical Leave Act and the Family Military Leave Act, including Military Caregiver Leave.

This policy is separate and apart from the Military Leave Policy, which applies to an employee's own active or reserve military service leave.

## I. Scope & Eligibility

The provisions of this policy apply to all eligible Union Pacific Railroad employees subject to collective bargaining agreements and to all absences designated as FMLA-related.

1.1. An employee is eligible for FMLA leave if he or she:

(a) Has been employed for at least 12 months; and

(b) Has at least 1,250 hours of service during the 12-month period immediately preceding the start of leave.

The 12 months of employment do not need to be consecutive. If an employee is maintained on the payroll for any part of a week, the week will count as a week of employment. For purposes of determining whether intermittent employment qualifies for meeting the 12-month period, 52 weeks is deemed equal to 12 months.

1.2. If an employee has accrued vacation or personal leave, he or she may elect, but will not be required, to substitute such paid time for all or any part of unpaid FMLA leave subject to terms of any applicable collective bargaining agreement. Accordingly, the employee will receive pay pursuant to Union Pacific's applicable paid leave policies and any governing collective bargaining agreement provisions during the period of otherwise unpaid FMLA leave. Therefore, any conditions or procedural requirements governing use of that accrued paid leave must be met in order for an employee to receive pay for FMLA leave.

1.3. An employee may choose (or may be required, depending on the employee's craft) to use paid leave concurrent with FMLA leave. In order to use paid leave for FMLA leave, employees must comply with Union Pacific's normal paid leave policies and follow your department's procedures for requesting such paid leave.

## II. Types of FMLA Leave & Duration

Various forms of FMLA leave are identified as follows:

2.1. Basic and Active Duty Family Military Leave.

FMLA leave of absence taken for family and/or medical reasons, including a qualifying family military event, is defined as an approved, unpaid absence available to eligible employees not to exceed 12 work weeks in a rolling calendar year. Leave may be taken for the following reasons:

* Upon the birth of the employee's child;
* Upon the placement of a child with the employee for adoption or foster care;

- When the employee is needed to care for his or her child, spouse, or parent who has a serious health condition;
- When the employee is unable to perform the essential functions of his or her position because of a serious health condition; or
- Because of any qualifying exigency arising out of the fact that the employee's spouse, son, daughter or parent is either (1) a member of the National Guard and/or Reserves and is on active duty (or has been notified of an impending call or order to active duty) in support of a national emergency, or a military action or operation outside the U.S. or (2) is a member of the regular Armed Forces who is or has been deployed to an assignment outside the U.S.

### 2.2. Military Caregiver Leave.

An FMLA leave of absence taken as Military Caregiver Leave is defined as an approved, unpaid absence that may be taken to care for a spouse, son, daughter, parent, or next of kin who is either (1) a current member of the Armed Forces, including the National Guard or Reserves, who is undergoing medical treatment, recuperation, or therapy, is otherwise in outpatient status, or is otherwise on the temporary disability retired list, for a serious injury or illness incurred in the line of duty while on active duty or (2) a veteran who has left military service sometime within the previous five years, and who is undergoing medical treatment, recuperation, or therapy for a serious injury or illness that the veteran incurred in the line of duty while on active duty, and that manifested itself before or after the service member became a veteran. Serious injury or illness is one that was incurred in the line of duty on active duty that may render him or her medically unfit to perform the duties of his or her office, grade, rank or rating.

Employees who are eligible for Military Caregiver Leave are entitled to a total of 26 work weeks of unpaid Military Caregiver Leave during a single 12-month period. This single 12-month period begins on the first day an eligible employee takes Military Caregiver Leave and ends 12 months after that date.

The leave described in Section 2.2 applies on a per-covered service member, per-injury basis. However, no more than 26 work weeks of leave may be taken within a single 12-month period by any employee. Even in circumstances where an employee takes other leave covered by the federal FMLA, including Active Duty Leave described in Section 2.1, the aggregate leave under this policy shall not exceed 26 work weeks during that 12-month period.

## III. Definitions of "Serious Health Condition" & "Qualifying Exigency"

As used above in Section II, "serious health condition," which relates to basic FMLA leave, and "qualifying exigency," which relates to Active Duty Family Military Leave, are defined as:

### 3.1. Serious Health Condition.

A serious health condition means an illness, injury, impairment, or physical or mental condition that involves:

(a) Inpatient care in a hospital, hospice, or residential care facility; or

(b) Continuing treatment by a healthcare provider involving:

i) A period of incapacity of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition that also involves:

- Treatment two or more times by a healthcare provider within 30 days of the start of the incapacity; or
- Treatment by a healthcare provider on at least one occasion within 7 days of the start of the incapacity that results in a regimen of continuing treatment under the supervision of a health care provider;

ii) Any period of incapacity due to pregnancy or for prenatal care;

iii) Any period of incapacity or treatment due to a chronic serious health condition that requires periodic visits of at least twice per year for treatment by a healthcare provider (this includes conditions that may cause episodic rather than a continuing period of incapacity);

iv) A period of incapacity that is permanent or long term due to a condition for which treatment may not be effective during which time the employee must be under the continuing supervision of, but need not be receiving active treatment by, a healthcare provider; and

v) Any period of absence to receive multiple treatments by a healthcare provider.


EXHIBIT
E-7
UP_Dungy   000448

UP: Family & Medical Leave Policy, including Active Duty Family Military Leave & Military Caregiver Lea...     Page 3 of 6

3.2. Qualifying Exigency.

A "qualifying exigency" as used in connection with Active Duty Family Military Leave only refers to the following circumstances:

(a) **Short-notice deployment:** To address issues arising when the notification of a call or order to active duty is seven (7) days or less;

(b) **Military events and related activities:** To attend official military events or family assistance programs or briefings;

(c) **Childcare and school activities:** For qualifying childcare and school-related reasons for a child, legal ward, or stepchild of a covered military member;

(d) **Financial and legal arrangements:** To make or update financial or legal affairs to address the absence of a covered military member;

(e) **Counseling:** To attend counseling provided by someone other than a healthcare provider for oneself, for the covered military member, or child, legal ward, or stepchild of the covered military member;

(f) **Rest and recuperation:** To spend up to five (5) days for each period in which a covered military member is on a short-term rest leave during a period of deployment; and

(g) **Post-deployment activities:** To attend official ceremonies or programs sponsored by the military for up to 90 days after a covered military member's active duty terminates or to address issues arising from the death of a covered military member while on active duty.

## IV. Other Considerations

4.1. Leave may be taken intermittently or on a reduced leave schedule when it is medically necessary and the employee is required to care for a family member with a serious health condition or the employee is taking FMLA leave for his or her own serious health condition. When it is physically impossible for an employee to return to work during a work assignment after the taking of intermittent FMLA leave, the entire amount of work missed will be counted against the employee's FMLA leave entitlement.

4.2. Leave may be taken for the birth or placement of a child; leave cannot be taken on a reduced leave schedule or intermittent basis. Under such circumstances, leave must be taken in a single block of time and within one year of the qualifying event.

4.3. A husband and wife who are both employed by the Company are each entitled to 12 work weeks of FMLA leave for basic and family military leave.

4.4. A husband and wife who are both employed by the Company are entitled to a combined 26 work weeks of Military Caregiver Leave.

## V. FMLA Notice Requirements

Employees should provide maximum advance notice of their intentions to take FMLA leave to allow for the time necessary to reassign duties or otherwise fill the assignment.

As of Jan. 1, 2014 all requests for FMLA should be made through the eHealthSafe system. Applicable forms are made available through eHealthSafe during the request process. Review this FMLA Quick Reference Guide (QRG) [PDF] for step-by-step instructions on how to formally request FMLA.

5.1. Employees must give 30-days advance notice of the need for FMLA leave when it is foreseeable for the birth or placement of a child, for planned medical treatment, or when leave is due to active duty of an immediate family member. All employees are required to comply with their department's or work group's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances.

5.2. When 30-days advance notice is not possible, notice is required as soon as practicable.



5.3. When planning or scheduling medical treatment, an employee should consult with his or her supervisor and make reasonable efforts to schedule the leave so as not to unduly disrupt operations.

5.4. In the case of an intermittent or reduced leave schedule, the employee must provide the reasons why the taking of intermittent or reduced schedule leave is necessary and provide the schedule for treatment to allow an opportunity to reassign duties or otherwise fill the assignment.

5.5. When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to Union Pacific as soon as practicable under the facts and circumstances of the particular case. It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employee's department's or work group's usual and customary notice requirements applicable to such leave. Notice should be given either in person or by telephone when medical emergencies are involved and may be given by the employee's spouse or other family member if the employee is medically unable to provide notice.

5.6. If an employee fails to give 30-days notice for foreseeable leave and has no reasonable excuse for the delay, FMLA may be denied until adequate notice of the need is provided, and the leave may be delayed as a result of the inadequate or delayed notice.

5.7. Nothing herein changes the normal call-in procedures or requirements for requesting leave that have been established by the employee's department or workgroup absent unusual circumstances. Where an employee does not comply with the usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.

## VI. Conditions of Leave & Certification of Medical Need

6.1. The reason for the leave must be covered under FMLA and the employee must provide the appropriate, completed FMLA Certification of Health Care Provider Form, which is made available during the eHealthSafe FMLA request process, supporting the need for the leave. A request for reasonable documentation of family relationship verifying the legitimacy of a FMLA Leave may also be required.

6.2. An employee will have fifteen (15) days in which to return a completed Certification Form. If the employee fails to provide timely certification after being required to do so, the employee may be denied the taking of the leave under FMLA. If the Certification Form is incomplete or insufficient, an employee will be given written notification of the information needed and will have seven (7) days after receiving such written notice to provide the necessary information.

6.3. If there is reason to doubt the validity of the medical certification, a second opinion, at the expense of the Company, related to the health condition may be required. If the original certification and the second opinion differ, a third opinion, at the expense of the Company, may be required. The opinion of the third healthcare provider, which the Company and the employee jointly select, will be the final and binding decision.

6.4. When the Company identifies information, such as a weekend pattern of FMLA usage, that casts doubt upon the employee's stated reason for the absences and there is no apparent medical reason for the timing of those absences along the pattern, and when the Company identifies an employee whose FMLA use is greater than the estimated frequency and duration certified by the employee's Health Care Provider, the Company may request recertification.

6.5. A request for Active Duty Leave must be supported by the Certification of Qualifying Exigency for Military Family Leave Form, as well as appropriate documentation, including the covered military member's active duty orders.

6.6. A request for Military Caregiver Leave must be supported by the Certification for Serious Injury or Illness of Covered Service Member Form, as well as any necessary supporting documentation.

6.7. As of Jan. 1, 2014 all requests for FMLA should be made through the eHealthSafe system. Applicable forms are made available through eHealthSafe during the request process. Review this FMLA Quick Reference Guide (QRG) for step-by-step instructions on how to formally request FMLA.

## VII. Maintenance of Benefits

An employee's healthcare coverage will be maintained by the Company during FMLA absences to the same extent that coverage was provided prior to the leave.

7.1. Any portion of the health plan premiums that had been paid by the employee prior to FMLA leave must continue to be paid by the employee during the FMLA leave period and handled in the same manner as for other periods of unpaid leave.

7.2. When, at an employee's request, accrued vacation, personal days, or sick leave is taken concurrently with FMLA leave, the employee's share of healthcare premiums will be paid in the normal manner through payroll deductions.

7.3. Medical and dental benefits may be continued during an FMLA leave of absence by the employee making his/her applicable monthly contributions to UPRR to cover the cost of participation in the plan. If an employee's health insurance premium is more than 30 days late, UPRR will mail a written notice advising such employee that the payment has not been received. Fifteen days after the notice has been mailed, UPRR will discontinue the employee's health insurance benefits while on FMLA leave. Upon returning from leave, the employee will be reinstated on the same terms and conditions as prior to taking leave without having to fulfill any qualifying period or physical examination.

7.4. Except as required by the Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1986, the Company's obligation to maintain health benefits under FMLA ceases if and when the employee (1) informs the Company of his or her intent not to return from leave; (2) fails to return from leave and thereby terminates employment; or (3) the employee exhausts his or her FMLA leave entitlement.

7.5. The Company may recover healthcare premiums from an employee who does not return to work after FMLA leave, unless the employee can show that the failure to return is due to the continuation, recurrence, or onset of an FMLA qualifying serious health condition or due to circumstances beyond the employee's control.

## VIII. Reinstatement Rights

8.1. Employees will return to service as provided for under applicable collective bargaining agreements.

8.2. An employee returning to service after FMLA leave has no greater right to reinstatement or to other benefits and conditions of employment than if he or she had been continuously employed during the FMLA leave.

8.3. Upon return from FMLA leave, an employee's benefits will be at the same level as before the leave began subject to any changes in benefit levels that may have taken place during the period of leave.

## IX. Fraudulent FMLA Leave

An employee who fraudulently obtains FMLA leave is not protected by the FMLA's job restoration or maintenance of healthcare benefits provisions.

## X. Failure to Return from Leave

The failure of an employee to return to work upon expiration of FMLA leave will subject the employee to termination in accordance with the applicable collective bargaining agreement.



## XI. State & Local Laws

FMLA provisions do not supersede provisions of state or local law that provide greater family or medical leave rights.

## XII. Changes in Policy

The Company reserves the right to modify the terms of this policy where benefits extended exceed FMLA requirements.

## XIII. Miscellaneous

Nothing in this policy insulates an employee from the application of any applicable collective bargaining agreement and any other Company policies.

## XIV. Need Help?

Employees requiring FMLA-related absences should contact their supervisor. The Company has the authority and responsibility to administer this leave policy, including deciding which absences from work will be charged as FMLA leave time. Questions concerning the FMLA or Union Pacific Railroad's policy and procedures for implementing the Act should be referred to the HR Service Center at (877) 275-8747 (ASK-UPHR), option 4, from 9 a.m. to 5 p.m., Central Standard Time.

## XV. U.S. Department of Labor Contact Information

U.S. Department of Labor
200 Constitution Ave., NW
Washington, DC 20210
1-866-4-USA-DOL



# Cover Page – Exhibit F





# Use Family Medical Leave Appropriately

The Family Medical Leave Act (FMLA) is designed to protect eligible employees' jobs so they can focus on qualifying personal or family serious medical situations, when necessary. Consider the following scenario. An employee had an approved FMLA case for a serious health condition. She had a planned Fourth of July holiday vacation beginning June 28, but had difficulty finding coverage for two scheduled shifts. The employee took a personal day July 2, but subsequently requested two days of FMLA leave for July 3 and 4 instead of returning to work. Employment was terminated for improperly taking FMLA leave to cover scheduled work days.

## Consequences

The employee sued her employer, contending the company interfered with her right to use FMLA and discriminated against her for using FMLA. The court stated the employee's assumption to use FMLA whenever she wanted due to an approved case was wrong. The employee "conveniently overlook[ed]" that her use of leave on each occasion had to be the result of a serious health condition rendering her unable to perform one or more essential job functions. The employee had no proof her July 3 and 4 FMLA leave were for serious health conditions.

## Policy

Employees should only use FMLA leave for its intended purpose. FMLA may provide up to 12 unpaid workweeks during a rolling 12-month period and is not a means to take additional time off from work not otherwise allowed under company policies or collective bargaining agreements. Please review Union Pacific's FMLA Policy.

Employees are reminded of their responsibilities when using FMLA leave:

· FMLA leave may only be used for its lawful purpose; intentional misuse and FMLA fraud are grounds for termination;

· An employee needing intermittent FMLA leave for a chronic condition must comply with Union Pacific's advance call-in procedures unless unusual circumstances prevent the employee from doing so (in which case the employee must provide notice as soon as he or she is able).

· Federal regulations clearly state that if an employee fails to provide timely notice, he or she may have the FMLA leave request delayed or denied and be subject to discipline as set forth in UP's attendance policy.

· FMLA regulations permit UP to request recertification if an employee's FMLA use is in excess of the frequency and duration identified by a health care provider, or if the employee has a pattern of taking leave in conjunction with rest days, weekends, or holidays.

## More Information

Employees should report violations of UP's Ethics and Business Conduct Policy to a manager or to the UP Values Line at 800-998-2000. Employees uncertain about FMLA policy or with questions can contact the HR Service Center at 877-275-8747 (ASK-UPHR) from 9 a.m. to 5 p.m. Central Standard Time.

Questions regarding collective bargaining, including labor contracts and negotiations, should be submitted to Ask LR.

# Cover Page – Exhibit G

 **BUILDING AMERICA®**


EXHIBIT

UNION PACIFIC NEWS ▬▬▬ UPDATED DAILY ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

# UPOnline

**AROUND THE RAILROAD**

## Ethics Bulletin: Use Family Medical Leave Appropriately

April 21, 2017 | 09:10 a.m. CDT

The Family Medical Leave Act (FMLA) is designed to protect eligible employees' jobs to permit employees to focus on their own or a family member's qualifying, serious medical condition. The below situation summarizes a recent FMLA court case not related to Union Pacific.

**Situation**

An employee had an approved intermittent FMLA case for a recurring medical condition causing arthritis and painful flare-ups, requiring bed rest. One day after legitimate FMLA use, the employee drove to a pub, became intoxicated and was arrested driving home. The employee was released from jail the next day but used FMLA to lay off. Subsequently, the employee used additional FMLA time on days corresponding with court days for the DUI case.

Eventually, the employee's manager was made aware of the arrest and conviction, searched court records, and concluded the employee was falsely using FMLA to cover absences connected to the arrest. The employee responded the absences were legitimate. The employee denied being in jail or court at the times of FMLA use but was unable to provide evidence substantiating the denial.

The employee was terminated based on the manager's good faith belief that the employee had falsely claimed FMLA leave to cover absences connected with the arrest for driving while intoxicated.

**Consequences**

In a subsequent lawsuit, the court found that the employer had not interfered with the employee's right to use FMLA and had not retaliated against the employee for using FMLA. The court ruled that the right to use FMLA extends only to cover absences cause by the medical reason for which the leave was certified. Furthermore, the court was not impressed with the employee's argument that the FMLA absences were coincidental with the court dates.

**Policy**

Employees should always use FMLA leave for its intended purpose. FMLA may provide up to 12 unpaid workweeks during a rolling 12-month period, but it is not a means to take additional time off from work for unrelated reasons not otherwise allowed under company policies or collective bargaining agreements. Please review UP's FMLA Policy.

Employees are reminded of their responsibilities when using FMLA leave:

* FMLA leave may only be used for its lawful purpose; intentional misuse and FMLA fraud are grounds for termination.
* An employee needing intermittent FMLA leave for a chronic condition must comply with UP's advance call-in procedures unless unusual circumstances prevent the employee from doing so (in which case the employee must provide notice as soon as he or she is able).
* Federal regulations clearly state that if an employee fails to provide timely notice, he or she may have the FMLA leave request delayed or denied and may be subject to discipline as set forth in UP's attendance policy.
* FMLA regulations permit UP to request recertification if an employee's FMLA use is in excess of the frequency and duration identified by a health care provider, or if the employee has a pattern of taking leave in conjunction with rest days, weekends, or holidays.

**More Information**

Employees should report violations of UP's Ethics and Business Conduct Policy to a manager or to the UP Values Line at 800-998-2000. Employees uncertain about FMLA policy or with questions can contact HR Services at 877-275-6747 (ASK-UPHR) from 9 a.m. to 5 p.m. Central Standard Time, Monday through Friday.

Questions regarding collective bargaining, including labor contracts and negotiations, should be submitted to Ask LR.

## Comments

# Cover Page – Exhibit H

UNION PACIFIC RAILROAD
1400 Douglas Street   Omaha, Nebraska  68179

**EXHIBIT**

October 06, 2017 FL035

Thomas E. Dunger
P.O. box 129
crestline, CA 92325

**Family Medical or Military Leave**
**Employee ID: 00444911**

Dear Thomas E. Dunger:

Health and Medical Services has recently become aware that you may have a qualifying
need for leave under the Family Medical Leave Act (FMLA), which also includes Family
Military Leave.

Our records indicate that you have requested and have met the initial eligibility
requirements for the following leave:

* Leave Type: FED FMLA
* Category:   Self
* Reason:     Self - Health Condition

Enclosed are forms 16873 Notice of Eligibility and Employee Rights and
Responsibilities, and the appropriate Certification form to certify your request for
leave. Form 16873 is yours to keep for your records; it explains your eligibility for
FMLA and your Rights and Responsibilities under the act.

You are required to submit a complete Certification form or supporting documentation
to verify if the reason for your need for leave would qualify under the Family &
Medical Leave Act.

Your Certification form or other supporting documentation should be returned to
Health & Medical Services within 15 days of the date of this letter. You may start to
use FMLA during the certification process. However if the appropriate certification
form or other supporting documentation is not provided or does not substantiate your
eligibility for leave as defined by the FMLA, all FMLA absences attributable to this
leave request will revert to unexcused absences. These unexcused absences, in turn,
may result in a violation of the applicable attendance or discipline policy. In the
event your use of FMLA leave was for reasons other than its intended purpose, you may
also be subject to discipline, up to and including termination of employment.

PLEASE NOTE: The enclosed information includes only a portion of the company's FMLA

UNION PACIFIC RAILROAD
1400 Douglas Street   Omaha, Nebraska  68179

policy. It is your responsibility to read and understand the entire policy when
taking FMLA. For further information please go to http://home.www.uprr.com/emp/ec/
policy/time_away/index.shtml

Information regarding the status of your FMLA request is available on the Employee
tab in eHealthSafe. eHealthSafe is available on your MyUP page under the Employee
menu.

If you have any questions, please contact Health & Medical Services at
877-275-8747 option 4.

Sincerely,

Health & Medical Services
Fax: 402-233-3305

cc:



www.up.com

UNION PACIFIC   BUILDING AMERICA®

DP_Dunger_000456

Exhibit H-26

# Cover Page – Exhibit I



**Exhibit I-27**

UP_Dunger_000467



UP_Dunger_000458

**Exhibit I-28**

# Cover Page – Exhibit J

UP: EDCS: Calendar

Page 1 of 1

## EDCS   Calendar

EXHIBIT

Current User: omnp293
Logout *

Location:   COMMERCE LOCO   Change Location

UP_Dunger_000459

### Filters

Employee:  [DUNGER, THOMAS E ▽]   Employee ID:  0444911   [Next]

<< Previous   [October ▽] [2017 ▽] [Go] Today          Next >>

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| \* October 2017 | | | MTD Hours Worked: 144:00 | | | |
| | | \* 3 \*<br>08:00 | \* 4 \*<br>08:00 | \* 5 \*<br>08:00 | \* 6 \*<br>08:00 | \* 7 \*<br>08:00 |
| | | \* 10 \*<br>08:00 | \* 11 \*<br>08:00 | \* 12 \*<br>08:00 | \* 13 \*<br>08:00 | \* 14 \*<br>08:00 |
| | | \* 17 \*<br>08:00 | \* 18 \*<br>08:00  EPE | \* 19 \*<br>08:00<br>FMLA NO PAY | \* 20 \*<br>08:00<br>FMLA VACATION PAID | \* 21 \*<br>08:00<br>FMLA VACATION PAID |
| | | \* 24 \*<br>08:00 | \* 25 \*<br>08:00 | \* 26 \*<br>08:00 | \* 27 \*<br>08:00 | \* 28 \*<br>08:00 |
| | | \* 31 \*<br>08:00 | | | | |

[Show Vacation] [Done]

Exhibit J-29

https://home.www.uprr.com/edx_admin_web/secure/index.jas/?wicket:interface=:3:::

11/15/2017

# Cover Page – Exhibit K

MVS MVS Reports

Current User:omnp293
Logout »

EXHIBIT

**Error**

• Please select the roster

Reports

Select Locations: CNRLO | Select Report: MVS Available Vacation Days | Select year: 2017

Select Rosters: ALL | Select Employee: ALL,

Calender View

MVS Assigned Vacation Days

KEY: AVAILABLE FULL BID NO DATA AVAILABLE
(DAY OF MONTH - DAYS TAKEN(MAX OFF))

**January 2017**

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| 1-4.0(6) | 2-6.0(6) | 3-6.0(6) | 4-3.0(6) | 5-3.0(6) | 6-2.0(6) | 7-5.0(6) |
| 8-2.0(6) | 9-3.0(6) | 10-1.0(6) | 11 | 12-3.0(6) | 13-1.0(6) | 14-1.0(6) |
| 15-1.0(6) | 16-1.0(6) | 17-1.0(6) | 18-2.0(6) | 19-1.0(6) | 20-1.0(6) | 21-2.0(6) |
| 22-1.0(6) | 23 | 24-1.0(6) | 25-1.0(6) | 26-2.0(6) | 27-4.0(6) | 28-2.0(6) |
| 29-1.0(6) | 30-1.0(6) | 31 | | | | |

**February 2017**

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| | | | 1 | 2-1.0(6) | 3-1.0(6) | 4-4.0(6) |
| 5-5.0(6) | 6-4.0(6) | 7-1.0(6) | 8-1.0(6) | 9-4.0(6) | 10-2.0(6) | 11-3.0(6) |
| 12-1.0(6) | 13-5.0(6) | 14-4.0(6) | 15-3.0(6) | 16-2.0(6) | 17-3.0(6) | 18-2.0(6) |
| 19-6.0(6) | 20-2.0(6) | 21-2.0(6) | 22 | 23-1.0(6) | 24-1.0(6) | 25-2.0(6) |
| 26 | 27-2.0(6) | 28-1.0(6) | | | | |

**March 2017**

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5-1.0(6) | 6 | 7-1.0(6) | 8-2.0(6) | 9-3.0(6) | 10-3.0(6) | 11-1.0(6) |
| 12-1.0(6) | 13-2.0(6) | 14-2.0(6) | 15-4.0(6) | 16-5.0(6) | 17-6.0(6) | 18-4.0(6) |
| 19-2.0(6) | 20-3.0(6) | 21-3.0(6) | 22-2.0(6) | 23-1.0(6) | 24-2.0(6) | 25-2.0(6) |
| 26-2.0(6) | 27-4.0(6) | 28-4.0(6) | 29-3.0(6) | 30-5.0(6) | 31-5.0(6) | |

**April 2017**

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| | | | | | | 1-6.0(6) |
| 2-2.0(6) | 3-2.0(6) | 4-2.0(6) | 5-2.0(6) | 6-3.0(6) | 7-4.0(6) | 8-5.0(6) |
| 9-6.0(6) | 10-2.0(6) | 11-2.0(6) | 12-1.0(6) | 13-3.0(6) | 14-4.0(6) | 15-5.0(6) |
| 16-6.0(6) | 17-4.0(6) | 18-2.0(6) | 19-1.0(6) | 20-1.0(6) | 21-3.0(6) | 22-6.0(6) |
| 23-3.0(6) | 24-3.0(6) | 25-3.0(6) | 26-2.0(6) | 27-2.0(6) | 28-4.0(6) | 29-5.0(6) |
| 30-2.0(6) | | | | | | |

**May 2017**

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| | 1-2.0(6) | 2-2.0(6) | 3-1.0(6) | 4-3.0(6) | 5-5.0(6) | 6-6.0(6) |
| 7-6.0(6) | 8-4.0(6) | 9-2.0(6) | 10-1.0(6) | 11-1.0(6) | 12-4.0(6) | 13-5.0(6) |
| 14-3.0(6) | 15-3.0(6) | 16-2.0(6) | 17-2.0(6) | 18-4.0(6) | 19-5.0(6) | 20-6.0(6) |
| 21-6.0(6) | 22-5.0(6) | 23-6.0(6) | 24-3.0(6) | 25-2.0(6) | 26-3.0(6) | 27-6.0(6) |
| 28-6.0(6) | 29-2.0(6) | 30-3.0(6) | 31-2.0(6) | | | |

**June 2017**

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| | | | | 1-4.0(6) | 2-4.0(6) | 3-6.0(6) |
| 4-4.0(6) | 5-6.0(6) | 6-6.0(6) | 7-6.0(6) | 8-6.0(6) | 9-6.0(6) | 10-5.0(6) |
| 11-4.0(6) | 12-4.0(6) | 13-4.0(6) | 14-4.0(6) | 15-3.0(6) | 16-6.0(6) | 17-4.0(6) |
| 18-6.0(6) | 19-6.0(6) | 20-5.0(6) | 21-5.0(6) | 22-6.0(6) | 23-4.0(6) | 24-5.0(6) |
| 25-6.0(6) | 26-5.0(6) | 27-5.0(6) | 28-4.0(6) | 29-2.0(6) | 30-1.0(6) | |

**July 2017**

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| | | | | | | 1-5.0(6) |
| 2-5.0(6) | 3-6.0(6) | 4-5.0(6) | 5-6.0(6) | 6-6.0(6) | 7-6.0(6) | 8-5.0(6) |
| 9-6.0(6) | 10-5.0(6) | 11-4.0(6) | 12-5.0(6) | 13-4.0(6) | 14-5.0(6) | 15-6.0(6) |
| 16-5.0(6) | 17-5.0(6) | 18-6.0(6) | 19-6.0(6) | 20-4.0(6) | 21-4.0(6) | 22-6.0(6) |
| 23-6.0(6) | 24-6.0(6) | 25-6.0(6) | 26-6.0(6) | 27-3.0(6) | 28-3.0(6) | 29-6.0(6) |
| 30-6.0(6) | 31-4.0(6) | | | | | |

**August 2017**

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| | | 1-6.0(6) | 2-5.0(6) | 3-5.0(6) | 4-3.0(6) | 5-6.0(6) |
| 6-5.0(6) | 7-2.0(6) | 8-2.0(6) | 9-5.0(6) | 10-6.0(6) | 11-6.0(6) | 12-6.0(6) |
| 13-6.0(6) | 14-4.0(6) | 15-4.0(6) | 16-5.0(6) | 17-5.0(6) | 18-4.0(6) | 19-5.0(6) |
| 20-4.0(6) | 21-4.0(6) | 22-5.0(6) | 23-4.0(6) | 24-5.0(6) | 25-4.0(6) | 26-2.0(6) |
| 27-1.0(6) | 28-4.0(6) | 29-5.0(6) | 30-3.0(6) | 31-3.0(6) | | |

**September 2017**

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| | | | | | 1-6.0(6) | 2-6.0(6) |
| 3-6.0(6) | 4-2.0(6) | 5-6.0(6) | 6-4.0(6) | 7-6.0(6) | 8-1.0(6) | 9-4.0(6) |
| 10-4.0(6) | 11-4.0(6) | 12-5.0(6) | 13-5.0(6) | 14-5.0(6) | 15-2.0(6) | 16-4.0(6) |
| 17-5.0(6) | 18-5.0(6) | 19-6.0(6) | 20-6.0(6) | 21-5.0(6) | 22-4.0(6) | 23-5.0(6) |
| 24-1.0(6) | 25 | 26-3.0(6) | 27-4.0(6) | 28-6.0(6) | 29-5.0(6) | 30-6.0(6) |

**October 2017**

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| 1-4.0(6) | 2-4.0(6) | 3-5.0(6) | 4-6.0(6) | 5-6.0(6) | 6-4.0(6) | 7-6.0(6) |
| 8-4.0(6) | 9-6.0(6) | 10-4.0(6) | 11-5.0(6) | 12-4.0(6) | 13-3.0(6) | 14-5.0(6) |
| 15-5.0(6) | 16-4.0(6) | 17-6.0(6) | 18-5.0(6) | 19-5.0(6) | 20-4.0(6) | 21-6.0(6) |
| 22-5.0(6) | 23-3.0(6) | 24-5.0(6) | 25-6.0(6) | 26-6.0(6) | 27-5.0(6) | 28-6.0(6) |
| 29-3.0(6) | 30-2.0(6) | 31-6.0(6) | | | | |

**November 2017**

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| | | | 1-3.0(6) | 2-1.0(6) | 3-3.0(6) | 4-6.0(6) |
| 5-4.0(6) | 6-5.0(6) | 7-6.0(6) | 8-5.0(6) | 9-5.0(6) | 10-5.0(6) | 11-6.0(6) |
| 12-2.0(6) | 13-3.0(6) | 14-6.0(6) | 15-5.0(6) | 16-6.0(6) | 17-6.0(6) | 18-5.0(6) |
| 19-4.0(6) | 20-6.0(6) | 21-6.0(6) | 22-6.0(6) | 23-4.0(6) | 24-4.0(6) | 25-6.0(6) |
| 26-6.0(6) | 27-5.0(6) | 28-6.0(6) | 29-6.0(6) | 30-6.0(6) | | |

**December 2017**

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| | | | | | 1-4.0(6) | 2-6.0(6) |
| 3-6.0(6) | 4-6.0(6) | 5-6.0(6) | 6-6.0(6) | 7-6.0(6) | 8-5.0(6) | 9-6.0(6) |
| 10-5.0(6) | 11-4.0(6) | 12-6.0(6) | 13-5.0(6) | 14-6.0(6) | 15-5.0(6) | 16-2.0(6) |
| 17-4.0(6) | 18-6.0(6) | 19-6.0(6) | 20-6.0(6) | 21-6.0(6) | 22-3.0(6) | 23-1.0(6) |
| 24-2.0(6) | 25-6.0(6) | 26-6.0(6) | 27-6.0(6) | 28-6.0(6) | 29-5.0(6) | 30 |
| 31 | | | | | | |

# Cover Page – Exhibit L

| DCS Location | Shop Location | Employee Id | Employee Name | Confirmation | Call Date/Time | Layoff Date | Shift | Time | Layoff Reason | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| RLO | COMMERCE LOCO | 0444911 | DUNGER, THOMAS E | 150163 | 10/19/2017 20:42:10 | 10/19/2017 | 3 | 22:00 - 06:00 | FMLA | |
| RLO | COMMERCE LOCO | 0444911 | DUNGER, THOMAS E | 150346 | 10/20/2017 20:56:35 | 10/20/2017 | 3 | 22:00 - 06:00 | FMLA PAID | |
| RLO | COMMERCE LOCO | 0444911 | DUNGER, THOMAS E | 150529 | 10/21/2017 20:38:18 | 10/21/2017 | 3 | 22:00 - 06:00 | FMLA PAID | |
| RLO | COMMERCE LOCO | 0444911 | DUNGER, THOMAS E | 153862 | 11/10/2017 22:04:47 | 11/10/2017 | 3 | 22:00 - 06:00 | FMLA | |
| RLO | COMMERCE LOCO | 0444911 | DUNGER, THOMAS E | 153688 | 11/09/2017 21:07:01 | 11/09/2017 | 3 | 22:00 - 06:00 | FMLA | |



Exhibit L-31

UP_Dunger_000461

# Cover Page – Exhibit M

UP: FMLA 365 Rollover: FMLA Absence Detail

 FMLA 365 Rollover   **FMLA Absence Detail**



Current User: omnp293
Logout

Exhibit M-32

UP_Dunger_000462

1-25 of 32 Records

« Previous | 1 | 2 | Next »

| Employee ID | Leave Type | Absence Type | FL Category | Date | Day Of Week | Usage Type | Portion Of Week Used | Holiday Usage | Weekend Usage | FL Status | nd | FL Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0444911 | FMLA | Intermittent | Family Member | 10/15/2014 | Wednesday | Normal | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 11/03/2014 | Monday | Normal | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 11/16/2014 | Sunday | Normal | 0.2 | N | Y | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 11/17/2014 | Monday | Normal | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 11/18/2014 | Tuesday | Normal | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 11/19/2014 | Wednesday | Normal | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 12/03/2014 | Wednesday | Normal | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 12/31/2014 | Wednesday | Normal | 0.2 | Y | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 05/14/2016 | Saturday | Cancelled | 0.2 | N | Y | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 05/17/2016 | Tuesday | Cancelled | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 05/18/2016 | Wednesday | Cancelled | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 05/19/2016 | Thursday | Cancelled | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 05/20/2016 | Friday | Cancelled | 0.2 | N | Y | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 05/21/2016 | Saturday | Cancelled | 0.2 | N | Y | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 05/24/2016 | Tuesday | Cancelled | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 05/25/2016 | Wednesday | Cancelled | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 05/26/2016 | Thursday | Cancelled | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 05/27/2016 | Friday | Cancelled | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 05/28/2016 | Saturday | Cancelled | 0.2 | N | Y | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 05/31/2016 | Tuesday | Cancelled | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 06/01/2016 | Wednesday | Cancelled | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 06/02/2016 | Thursday | Cancelled | 0.2 | N | N | | | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 06/03/2016 | Friday | Cancelled | 0.2 | N | Y | | | CLOSED |

 FMLA 365 Rollover   **FMLA Absence Detail**



Current User: omnp293
Logout »

**26-32** of **32 Records**

« Previous | 1 | 2 | Next »

| Employee ID | Leave Type | Absence Type | FL Category | Date | Day Of Week | Usage Type | Portion Of Week Used | Holiday Usage | Weekend Usage | FL Status |
|---|---|---|---|---|---|---|---|---|---|---|
| 0444911 | Undefined | Intermittent | Undefined | 06/08/2016 | Wednesday | Cancelled | 0.2 | N | N | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 06/09/2016 | Thursday | Cancelled | 0.2 | N | N | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 06/10/2016 | Friday | Cancelled | 0.2 | N | Y | CLOSED |
| 0444911 | Undefined | Intermittent | Undefined | 06/11/2016 | Saturday | Cancelled | 0.2 | N | Y | CLOSED |
| 0444911 | Federal FMLA | Intermittent | Self | 10/19/2017 | Thursday | Normal | 0.2 | N | N | OPEN |
| 0444911 | Federal FMLA | Intermittent | Self | 10/20/2017 | Friday | Normal | 0.2 | N | Y | OPEN |
| 0444911 | Federal FMLA | Intermittent | Self | 10/21/2017 | Saturday | Normal | 0.2 | N | Y | OPEN |

Exhibit M-33

UP_Dunger_000463

# Cover Page – Exhibit N



# Cover Page – Exhibit O



## Employee Information  11/17/2017
Page Generated: 11/17/2017 06:14

Current User: OMNP293
Logout »

**Employee Information**

| Employee: | [_____] | Submit |

OR

| Location: | CMRLO |
| Employee: | DUNGER THOMAS E |
| Active Only: | ☐ |

| Select | PDF |

| Employee ID | Last Name | First Name | MI | Birth Date | Hire Date | SV |
|---|---|---|---|---|---|---|
| 0444911 | DUNGER | THOMAS | E | 11/23 | 03/14/2011 | 6 |

| Address | City | State | Zip Code |
|---|---|---|---|
| P.O. BOX 129 | CRESTLINE | CA | 92325 |

| Home Phone | Cell Phone | Alt Phone |
|---|---|---|
| (909) 781-4423 | | |

**PRS - Days as of the Last Closed Payroll**

| | DUE | TAKEN | LEFT |
|---|---|---|---|
| VAC | 80 | 72 | 8 |
| PER LV | 0 | 0 | 0 |
| SICK | 0 | 0 | 0 |
| SFTY | 0 | 0 | 0 |

| Vac Qual Yr | Days Worked |
|---|---|
| 7 | 202 |

| Position ID | Occupation | EDS Status | Sub Band Description | Status Date |
|---|---|---|---|---|
| 00121203 | MACHINIST | 2H | | 07/01/2012 |

| OT Elig | P1 Date | Last Timecard | User ID | Days |
|---|---|---|---|---|
| Y | | 11/17/2017 | OMNQ831 | |

| PSoft Status Description | PSoft Stat Date |
|---|---|
| Agr Return from Leave of Abs | 09/22/2016 |

---

Job | Personal Record | Discipline | ETE | Seniority | Absent Time | Time Away | LOA and Status | 90

**Position**

| Pos ID | Pos Stat | Qual | Rest Days | Sen Root/TIIe Code | Paid Func |
|---|---|---|---|---|---|
| 00121203 | | 0 | SUN  MON | 0000016953 | Y |

**Position Detail**

| Sft | Start | End | Ernn | Area | PPC | HOS | Mon | Tue | Wed | Thur | Fri |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 22:00 | 06:00 | 1333 | 3603 | 711 | 0 | 1 | 1 | 1 | 1 |

**Job History**

| Effective Date | Action | Reason | Job Code | Job Title |
|---|---|---|---|---|
| 08/09/2017 | XFR | | A32711 | MACHINIST |
| 01/19/2017 | XFR | | A32704 | MACHINIST LEAD ME |
| 09/22/2016 | XFR | | A32711 | MACHINIST |
| 09/22/2016 | RFL | | A32711 | MACHINIST |

EXHIBIT

# Cover Page – Exhibit P

# Employee Information 11/17/2017

Page Generated: 11/17/2017 06:14

Current User: OMNP293
Logout »

## Employee Information

| | |
|---|---|
| Employee: | [ ] Submit |
| OR | |
| Location: | CMRLO |
| Employee: | VARGAS JASSIER C |
| Active Only: | [ ] |
| Select | PDF |

| Employee ID | Last Name | First Name | MI | Birth Date | Hire Date | Sy |
|---|---|---|---|---|---|---|
| 0452004 | VARGAS | JASSIER | C | 01/24 | 04/09/2012 | 5 |

| Address | City | State | Zip Code |
|---|---|---|---|
| [redacted] | BALDWIN PARK | CA | 91706 |

| Home Phone | Cell Phone | Alt Phone |
|---|---|---|
| [redacted] | | |

| Position ID | Occupation | EDCS Status Code and Description | | Status Date |
|---|---|---|---|---|
| 00217621 | ELECTRICIAN | 2H | | 07/01/2012 |

| PRS - Days as of the Last Closed Payroll | DUE | TAKEN | LEFT |
|---|---|---|---|
| VAC | 80 | 72 | 8 |
| PER LV | 0 | 0 | 0 |
| SICK | 0 | 0 | 0 |
| SFTY | 0 | 0 | 0 |

| Vac Qual Yrs | Days Worked |
|---|---|
| 6 | 209 |

| OT | Last P1 Date | Last TimeCard | User ID | Days |
|---|---|---|---|---|
| Y | | 11/17/2017 | OMNZ646 | |

| PSoft Status Description | PSoft Stat Date |
|---|---|
| Agr Return from Leave of Abs | 07/19/2013 |

Job | Personal Record | Discipline | ETE | Seniority | Absent Time | Time Away | LOA and Status | 90

| Position | | | | | | |
|---|---|---|---|---|---|---|
| Pos ID | Pos Stat | Qual | Rest Days | | Sen Rost / Title Code | Paid Lunch |
| 00217621 | | 0 | SAT | SUN | 0000016975 | Y |

| Position Detail | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sft | Start | End | Frmn | Area | PPC | HOS | Mon | Tue | Wed | Thur | Fr |
| 3 | 22:00 | 06:00 | 1333 | 2003 | 858 | | 0 | 0 | 0 | 0 | 1 |
| 3 | 22:00 | 06:00 | 1339 | 3803 | 858 | | 1 | 1 | 1 | 1 | 0 |

EXHIBIT

| Job History | | | | |
|---|---|---|---|---|
| Effective Date | Action | Reason | Job Code | Job Title |
| 08/17/2017 | XFR | | A32858 | ELECTRICIAN |
| 08/17/2017 | XFR | | A32858 | ELECTRICIAN |
| 03/23/2017 | XFR | | A32858 | ELECTRICIAN |

Exhibit P-36

# Cover Page – Exhibit Q

UP: Employee Information: 11/17/2017

Page 1 of 2

 **Employee Information  11/17/2017**
Page Generated: 11/17/2017 06:14

Current User: OMNP293
Logout »

## Employee Information

| Employee: | | Submit |
| --- | --- | --- |

OR

| Location: | CMRLO ▾ |
| --- | --- |
| Employee: | SCHARF HARRISON T ▾ |
| Active Only: | ☐ |

| Select | PDF |
| --- | --- |

| Employee ID | Last Name | First Name | MI | Birth Date | Hire Date | SV |
| --- | --- | --- | --- | --- | --- | --- |
| 0447462 | SCHARF | HARRISON | T | 07/22 | 06/20/2011 | 6 |

| | Address | City | State | Zip Code |
| --- | --- | --- | --- | --- |
| | | SAN JUAN CAPISTRA | CA | 92675 |

| Name Phone | Cell Phone | Alt Phone |
| --- | --- | --- |
| | | |

| PRS - Days as of the last closed payroll | DUE | TAKEN | LEFT |
| --- | --- | --- | --- |
| VAC | 80 | 64 | 16 |
| PER LV | 0 | 0 | 0 |
| SICK | 0 | 0 | 0 |
| SFTY | 0 | 0 | 0 |

| Yr Qualify | Days Worked |
| --- | --- |
| 7 | 220 |

| Position ID | Occupation | EDS Status Code and Description | Status Date |
| --- | --- | --- | --- |
| 00210288 | ELECTRICIAN | 2H | 07/01/2012 |

| OT | Last Pr Date | Last Timecard | User ID | Day |
| --- | --- | --- | --- | --- |
| Y | | 11/17/2017 | OMNQ785 | |

| PBSR Status Description | PBSR Stat Date |
| --- | --- |
| Agr Set up to Journeyman | 07/29/2015 |

| Job | Personal Record | Discipline | ETE | Seniority | Absent Time | Time Away | LOA and Status | 90 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |

| | | | | | Position | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Pos ID | Pos Stat | Qual | Rest Days | | Sen Roster | Title Code | Rad Graph | |
| 00210288 | | 0 | FRI | SAT | 0000016975 | | Y | E |

| | | | | | Position Detail | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| ISN | Start | End | Tmin | Area | PPC | HOS | Mon | Tue | Wed Thur Fri |
| 3 | 22:00 | 06:00 | 1339 | 3803 | 858 | N | 1 | 1 | 1  1  0 |

| | | | Job History | |
| --- | --- | --- | --- | --- |
| Effective Date | Action | Reason | Job Code | Job Title |
| 03/23/2017 | XFR | | A32858 | ELECTRICIAN |
| 03/23/2017 | XFR | | A32858 | ELECTRICIAN |
| 03/01/2017 | XFR | | A32858 | ELECTRICIAN |
| 10/20/2016 | XFR | | A32858 | ELECTRICIAN |

EXHIBIT
Q6

**Exhibit Q-37**

# Cover Page – Exhibit R

**Employee Information   11/17/2017**
Page Generated: 11/17/2017 06:14

Current User: OMNP293
Logout »

## Employee Information

Employee: [_____]   Submit

OR

Location: CMRLO

Employee: LEMUS JOHN M

Active Only: ☐

Select     PDF



| Employee ID | Last Name | First Name | MI | Birth Date | Hire Date | SV |
|---|---|---|---|---|---|---|
| 0352670 | LEMUS | JOHN | M | 04/28 | 01/29/2001 | 16 |

PRS - Days as of the Last Closed Payroll

| | DUE | TAKEN | LEFT |
|---|---|---|---|
| VAC | 120 | 64 | 56 |
| PER LV | 8 | 0 | 8 |
| SICK | 0 | 0 | 0 |
| SFTY | 0 | 0 | 0 |

Address: | City | State | Zip Code |
| RIALTO | CA | 92377 |

Home Phone | Cell Phone | Alt Phone |

| Vac Qual Yrs | Days Worked |
|---|---|
| 17 | 218 |

| Position ID | Occupation | BDS Status Code and Description | Status Date |
|---|---|---|---|
| 00210234 | MACHINIST | 2H | 07/01/2012 |

| Qual Activity Date | Last TimeCard | User ID | Days |
|---|---|---|---|
| Y | 11/17/2017 | OMNI952 | |

| PSOR Status Description | PSOR Stat Date |
|---|---|
| Agr Return from Leave of Abs | 09/09/2010 |

---

| Job | Personal Record | Discipline | ETE | Seniority | Absent Time | Time Away | LOA and Status | 90 |

### Position

| Pos ID | Pos Stat | Qual | Rest Days | Sen Rost/Title Code | Paid Lunch |
|---|---|---|---|---|---|
| 00210234 | | 0 | FRI SAT | 0000016953 | Y |

### Position Detail

| Sft | Start | End | Train Area | PPS | HOS | Mon | Tue | Wed | Thur | Fri |
|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 22:00 | 06:00 | 1339 | 3803 | 711 | N | 1 | 1 | 1 | 1 | 0 |

### Job History

| Effective Date | Action | Reason | Job Code | Job Title |
|---|---|---|---|---|
| 08/09/2017 | XFR | | A32711 | MACHINIST |
| 05/25/2017 | XFR | | A32711 | MACHINIST |
| 05/25/2017 | XFR | | A32711 | MACHINIST |
| 10/06/2016 | XFR | | A32711 | MACHINIST |

EXHIBIT

**Exhibit R-38**

# Cover Page – Exhibit S

Work/School Note

DUNGER, THOMAS - 2215332

## Work or School Excuse *

Patient: DUNGER, THOMAS    MRN: 2215332    FIN: 4316196
Age: 28 years   Sex: Male   DOB: 11/23/1988
Associated Diagnoses: None
Author: McNutt, Carrolyn

Today's date: 10/19/2017.

To whom it may concern:
This patient was seen in my office on 10/19/2017. . Please excuse him/ her from work, today, for the next 2 days. He/ she may return to work on 10/22/2017. Please contact me if you have any questions or concerns.

Sincerely,
Lizotte, Scott, FNP
909-948-8100

Charted Date:          October 19, 2017 11:00 AM PDT
Subject / Title:        Work or School Excuse *
Performed By:          McNutt , Carrolyn on October 19, 2017 11:00 AM PDT
Electronically Signed By: McNutt , Carrolyn on October 19, 2017 11:00 AM PDT
Visit Information:      4316196, Rancho San Antonio Urgent Care, Outpatient, 10/19/2017 -

SAN ANTONIO URGENT CARE
7777 MILLIKEN AVE
RANCHO CUCAMONGA, CA 91730
(909)948-8100

Printed by:    McNutt , Carrolyn                   Page 1 of 1
Printed on:    10/19/2017 11:00 AM PDT              (End of Report)

**Exhibit S-39**

UP_Dunger_000468

# CERTIFICATE OF SERVICE

I, the undersigned, am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 4747 Executive Drive, Suite 1000, San Diego, California, 92121.

On April 22, 2019 I served the foregoing document entitled **DECLARATION OF DANIEL GLENN IN SUPPORT OF DEFENDANT UNION PACIFIC RAILROAD COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Joseph Y. Avrahamy (SBN 150885)<br>LAW OFFICES OF JOSEPH Y. AVRAHAMY<br>16530 Ventura Boulevard, Suite 208<br>Encino, California 91436 | Telephone: (818)990-1757<br>Facsimile: (818)990-1955<br>E-Mail: javrahamy@jyalaw.com<br>Co-Counsel for Thomas Dunger |
| Marla A. Brown (SBN 140158)<br>2324 South Beverly Glen Boulevard, Suite 205<br>Los Angeles, California 90064 | Telephone: (310)779-4354<br>Facsimile: (818)990-1955<br>E-Mail: socalmab@sbcglobal.net<br>Co-Counsel for Thomas Dunger |

☒   **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed April 22, 2019 at San Diego, California.

Susan E. Valle
_____
Print Name

By: _Susan E. Valle_
_____
Signature

FPDOCS 35182420.1